2012-11-28 My name is Paul Sortland. I represent the appellant and defendant in this matter, Lauren David, a farmer from North Dakota. This case involves the successful efforts by Monsanto to enforce royalties on infringements of its patent rights by farmers who kept their seeds for replanting from year to year in apparent violation of Monsanto's patent rights in the patent agreement. Is this a patent appeal or is this a collection action? It's really a collection action, Your Honor, arising out of a patent. And therefore we are advised that since we're in this court before we're going to this court again. If it's a collection action, why does it belong here? Because the original action was a patent action, and it's my understanding that any subsequent matters relating to that same action go back to this court. In this case, Monsanto previously Would it be pursuant to Rule 60B, right, which deals with the disputes as to the court's satisfaction of the judgment? Actually, I think the jurisdictional clause in the U.S. Code requires us to go to this court. Well, I was thinking more as to whether it belongs in a separate state court proceeding as opposed to in the district court. The district court has 60B-5 jurisdiction. I mean, we've argued that it should go to state court. That's certainly part of our argument, which we've got as a new issue, whether or not there's an accordant satisfaction which should be decided by the courts of either North Dakota or Missouri. So I hope we've kept that argument open. In this case, Monsanto received a judgment in 2008 for reasonable royalty of $86,798. At the same time, the court awarded Monsanto legal fees in the amount of $323,000 and costs and disbursements pursuant to the technology agreement for a total of $657,000. That judgment was essentially affirmed by this court. There were some minor modifications made, but that's the amount of the judgment that my client faces. The only collection, there's been two collection efforts here. On September 9, 2009, Monsanto garnished my client's bank accounts and received $51,688. The only other time Monsanto was able to collect on this account was the amount at issue, the $35,000 check paid in February 2011 with this letter indicating some discussions between my client and Monsanto. It was sent to Monsanto. It was a copy to someone. I can't tell who it is. But it didn't go to the right people. Well, that's an issue. There was no direction as required under the UCC that all communications be directed to Mr. Fogarty's office or to anyone else. There's a suggestion in Mr. Fogarty's letter following an earlier attempt by my client to communicate with Monsanto that it should go through his office, but there wasn't any direction as required under the UCC. So my client basically ignored that letter and communicated with Monsanto, and Monsanto obtained this check, which it would not have been able to obtain otherwise, of $35,000 together with a letter saying in part, please accept this check as full payment or return promptly, and the check itself was marked satisfaction of judgment in full and accepted and deposited by Monsanto. Of course, the check has never been returned to Laura and David. It was accepted and kept in the corporate account of Monsanto. It wasn't until seven months later that corporate counsel got involved and brought a motion then to the district court in St. Louis to have acceptance of the check determined as a mere partial satisfaction, which of course was contrary to the terms of the payment and the agreement between Laura and David and Monsanto. And the court issued a minute order on October 29, 2011, granting the motion for partial satisfaction, and this appeal runs from that minute order. Our argument in this case is that acceptance of this check under the restrictive circumstances issued by my client is binding against Monsanto. We argue first of all that this constitutes a new agreement for satisfaction of the judgment and an accord was reached between Laura and David and Monsanto. That would be the common law argument. And conversely, we also assert pursuant to 3-311 of the UCC, we've met all the qualifications for acceptance of a satisfaction through an instrument. It should also be noted that there is a fair amount of dispute concerning these attempts by Monsanto to enforce patents against farmers. That gets to the issue that seems to me to be, at least as far as I can see, the core of the question in the case, which is whether there is, whether you satisfy the requirement that there be a bona fide dispute as to the amount of the obligation. Now, I understand your argument that, well, it's, you know, there's a lot of dispute as to whether Monsanto is legally entitled to do what it has been doing with respect to seeds, the Roundup Ready seeds, and also that there is a question as to whether this judgment is collectible. But those don't seem to me to go to the question of whether there is a bona fide dispute as to the amount of this judgment. Those go to the question of whether the judgment was properly entered in the first place, a question that were passed at this point, or two, whether the judgment is likely to be collected, which doesn't undermine its determinacy in terms of the amount owed. Why isn't that correct? When the UCC talks about that, they don't state that the dispute relate around the judgment itself. There's nothing in the UCC that requires that. 3-311 specifies the amount was unliquidated or subject to bona fide dispute. There isn't any restriction that that bona fide dispute be as to the amount of the judgment or the way it was entered or whatever. It just says bona fide dispute. In this case, Monsanto, we assert, made a good deal with my client, with Lauren David, because of the items that you have addressed. It was not able to collect this judgment. It had been apparently trying for several years, and it had only received less than $60,000 on this judgment of over $600,000 plus interest accruing since then. By acceptance of the $35,000, it got $35,000 it could not have gotten. I would also point out that $35,000, plus the amount that was collected, was more than Lauren David would have had to pay for his soybeans the next year. Essentially, Monsanto was made whole, if you will, out of this farmer simply keeping his crop from year to year. That, of course, leads us to the second reason this is a bona fide dispute. Of course, as this court knows, the U.S. Supreme Court, just this last month, issued a writ of certiorari to this court in the case of Monsanto versus Bowman, which goes to the Roundup-resistant soybean products, and whether or not the doctrine of patent extinguishment applies to these cases. It's too late for your client to benefit if the Supreme Court rules in favor of the farmer in that case. It's too late for your client to enjoy any benefit from that ruling, right? Well, I'm sure we'd try a Rule 60 motion to say it's no longer equitable to enforce that In addition, by entering into this agreement with my client to settle, keep in mind, Monsanto's suffered a lot of adverse publicity from my client and others like him. Mr. David's case has received widespread news across the country, and by settling this case with him, Monsanto's putting it behind. They've elected not to, apparently, as appears from their continuing to press this issue. Well, on one hand, you've got someone in the corporate office that decided to do it, and on the other hand... But somebody had to decide between the two of them which course to follow, and they've decided to follow, let's call it, the hard-nosed approach. Unfortunately, that does appear to be the case. But earlier, someone in the corporate office decided, no, let's put an end to this. Let's accept the $35,000. But so what? They have what I think we have to all agree is a liquidated obligation. Oh, sure. It's liquid, sorry. And then the only question is, is it subject to a bona fide dispute? And the fact that there may be circumstances that could lead you to file, in good faith, a request for a reduction in the amount of the judgment or an elimination of the judgment doesn't simply seem to me to constitute putting the amount of the judgment in dispute. If it does, then virtually every judgment would be subject to being characterized as being in dispute. Is it not? Well... You can always say, well, you know, we think that after reflection, the court is going to see that this is a judgment that should be overturned. If you're just looking from that perspective, yes. But in the context of David Monsanto, you have a large amount of publicity. But furthermore, you go back to the common law approach with respect to, was there an agreement here between the parties? Remember, the UCC section, 3-311, applies only to a court in satisfaction by use of the instrument. That's basically, to correct these issues, you know, where someone sends in a check to the credit card company that simply deposits all the checks right away, and someone puts paid in full. Well, that's not binding on something like that where the check, you know, is so marked. But in this case, we don't have that type of situation. We've got a very individual, specific claim with respect to Lauren David and specific defenses that Lauren David had available to him. Moreover, Monsanto wanted to collect the amount, and they agreed to that, and that should be binding and held against them. Mr. Thornton, you wanted to keep five minutes for rebuttal. You're well into that time. You can use it now or save it. I'll save it. Thank you. Mr. Arnold. Thank you, Your Honor, and may it please the court. I think this really is a very simple issue. Can a judgment debtor avoid the vast majority of his debt by sending a restrictive endorsement check to a general corporate address? As counsel has indicated, the controlling answer here is UCC Section 3-311, and that says that a restrictive endorsement on a check can produce an accordant satisfaction if the debtor can satisfy three other conditions. Number one, as you pointed out, Judge Bryson, there has to be a bona fide dispute about the amount of the debt. Number two, the debtor has to act in good faith, and number three, the debtor has to communicate with the creditor's designated representative, and none of those three things happened in this case. Bona fide dispute. There is no question that the district court had subject matter jurisdiction of the case. This court affirmed the judgment in 2009. The Supreme Court denied cert in 2010. There cannot, as a matter of law, be any bona fide dispute about the validity or amount of that judgment. Rule 69 says that questions of execution are governed by the law of the state where the district court sits. So this is governed by Missouri law. And I've sided with you, Missouri law going back as far as a century, that squarely holds that when a judgment is final, affirmed on appeal, there is not, as a matter of law, any bona fide dispute about the validity or amount of that judgment. Mr. Arnold, what's the significance of the 1099? Well... It almost suggests that it's forgiveness of debt as income? It couldn't have been forgiveness of debt because the debt that would have been forgiven under their theory is like $650,000, so it couldn't have been that. The short answer, Judge Lurie, it was a mistake, and it was promptly rescinded as soon as the mistake was discovered.  But I will represent the court that those are the facts. We have rescinded the 1099. And in any event, the 1099 doesn't get him around 3311 because there is not a bona fide dispute. Now, the question was raised, well, what happens if Bowen decides that the first sale rule prevents Monsanto from enforcing its rights? And counsel suggested he'd file a Rule 60B motion. Well, he would lose. Well, you think so. If he files it in Missouri, you say. He would file it in Missouri, and under prevailing 8th Circuit law, he would lose. I would refer you to the 8th Circuit case, Kansas Public Employees Retirement System v. Reamer and Cogar Associates. You will find that at 194F 3rd, page 922. Now, what happened in that case was the district court entered a summary judgment for the defense on statute of limitations grounds, and the 8th Circuit affirmed it. And a week after the mandate issued, the Kansas Supreme Court issued an opinion saying that the statute of limitations was much longer than the 8th Circuit had thought it was, and in fact, the claims were timely. And papers filed a Rule 60B motion to set aside the judgment. That was denied, and the 8th Circuit affirmed it. The point is, the finality of the judgment, and there's no question there's a final judgment here, the finality of the judgment trumps any subsequent change in the law. Do you happen to know, in that case, whether the 8th Circuit affirmed on the ground that the district court had not abused its discretion by denying the 60B motion, which is usually the standard? That was the precise holding, yes. Right, so in other words, the district court could have presumably said, you know, this does seem unjust. I'm going to go ahead and give relief from the judgment, and it would not have necessarily been reversible error to do so. I think it would have been, Your Honor. But the 8th Circuit didn't say that. The 8th Circuit didn't say that in that case. So that case doesn't really help us a whole lot, but the question of whether it's clear that the district court not only would deny a 60B motion, but would have to. I am not aware of any law that says a subsequent change in the law after a judgment has been entered and has been affirmed on appeal and cert has been denied is subject to further modification. Well, there are lots of criminal cases in which that happens all the time. That's why people who are held in jail under statutes that are later held to be unlawfully passed or whatever are free. I think there is a substantial difference from the standpoint of due process between criminal and civil cases. I'm not aware of any case that says in a civil case that subsequent changes in the law allow you to reopen. But you're not aware of a case that said it would be absolutely always an abuse of discretion if a district court judge issued a 60B? Standing here today, I can't give you such a case. Well, then that's your problem. I mean, your adversary is making an argument and saying he thinks there's a slight chance out there and that's enough to keep a bona fide dispute alive. Unless you're willing to bet your farm or your life or whatever against him on that, he still has his issue open. But if you allow that hypothetical prospect of a potential change in the law affecting a judgment that is years old, if you allow that, then you're undermining all judgments. No judgment can ever be final. No judgment could ever be beyond dispute. And that's just not the law in Missouri. The law in Missouri is that a final judgment is binding and there cannot be a bona fide dispute about that. Now, there's some other questions raised about collectibility. There's no evidence in the record that this judgment is uncollectible. There is a very vague reference in Mr. David's affidavit about there are questions about collectibility. But that collectibility wouldn't – I would assume you would – your second point would be collectibility has nothing to do with whether there is a fixed amount in dispute. Yeah, there's still not a bona fide dispute, so collectibility doesn't matter. Now, on the question of good faith, there have been lots of references to discussions between Mr. David and Monsanto and a decision by Monsanto to accept $35,000 in settlement. There's no evidence in the record to support any of those propositions. There is a vague, conclusory reference in the letter that he sent about based on the instructions given. But there's no specificity. There is no statement as to who he spoke to, what those representations or discussions were, or when they occurred. Was there any discovery? No. There was simply this affidavit. And the affidavit was, in my judgment, entirely insufficient to establish there had been discussions. Now, if those discussions took place, Mr. David has personal knowledge of who he spoke to, what was said, and when it occurred. But he didn't include any of that in his affidavit. And I think you can conclude from that that there were no such discussions and that he did not have a good faith basis for believing that he had reached a settlement with Monsanto. And that's confirmed, it seems to me, by the fact that instead of sending the check to Mr. Fogarty, who knew something about the case, he sent it to the general corporate address. And that, quite frankly, Your Honor, I think is a trick. It was intended to have a low-level accounts receivable person stamp the check and pass it on. It's not the product of a good faith effort to settle. And the final point on good faith. The judgment here, including post-judgment interest, was almost $700,000. And yet he sends in a check for $35,000, 5%. How can we resolve that? We had a minute order here. There's no written opinion by the district court judge. We have no idea whether the district court judge thought there was an absence of good faith here. How can we decide that? We're not a trial judge. What I'm saying, Your Honor, is that based on the lack of evidence from Mr. David, number one, and number two, based on the cases I have cited that say when the debtor knows that a substantial sum is at issue, is due an owing, and provides an attempt to settle for a small fraction of that, that as a matter of law is not good faith. That's not a fact question. That's a question of law. In the cases that I have cited in the brief, so say. Suppose it is a question of fact. I'm sorry? Suppose we conclude that it is a question of fact. Does that change your answer? It would not change my answer in terms of the outcome, Your Honor. And the reason very simply is that Mr. David has the burden of proof. If he wants to demonstrate that there was an accord and satisfaction so that he is entitled to an order of full satisfaction, it's his burden. And my argument is that by failing to put in evidence specific to who, what, and when, he has failed in his burden of proof. So the judgment should therefore be affirmed. What is the procedurally, you say the district court was, it was appropriate for the district court to handle this matter rather than either A, kicking it over to a collection action in the state court. You could have brought a collection action, I take it, in North Dakota, presumably. I would think we probably could have, but we have a federal judgment that we are entitled to enforce. And the question is, what is the source of the federal judge's power to enter this ancillary order?  All right. You're comfortable then saying that this is a 60 v. 5 proceeding to resolve legal or, for that matter, factual disputes over the accord and satisfaction issue? That's correct. So no jury need apply? Of course not. Well, Mr. David is arguing the contrary. Well, I understand. To be fair to his argument, I think, of course, it might be. I understand he is arguing the contrary, which is wrong. Rule 60B is an equitable rule. You don't have jury trials in equity. Well, that's assuming that Rule 60 v. 5 applies. And it may well, but that's the assumption that your argument necessarily rests on. Because if it were not for 60 v. 5 or the equivalent common law power of a federal judge to decide this issue, you would assume it becomes a state law contract issue, which belongs in the North Dakota state courts. Or the Missouri state court, given that there was a choice of forum. I'm not sure the choice of forum would extend to this, but maybe. Well, I think it's a moot point because, in substance, this was a Rule 60 v. 5 proceeding. Now, it may not have been labeled as such, but I've always thought federal courts determine the meaning of pleading by its substance rather than the title that it is put on. So this is a 60 v. 5 proceeding. Okay. Okay. And then the final point on 3311, of course, is, as you pointed out, Judge Lurie, the payment went to the wrong place. If you look at page 84 of the appendix, I think you will see that in context, Mr. Fogarty's letter to Mr. David quite clearly said, you want to resolve this case, talk to me. And as was indicated earlier, Mr. David chose to disregard that advice. The question is whether or not that's a direction as opposed to a suggestion. Well, I think if you read it in context, it is clearly a direction. A reasonable person reading that letter would say, okay, I now know if I want to resolve this for less than what I owe, I have to talk to Mr. Fogarty. And, of course, the whole point of the letter and the whole point of subsection C1 of 3311 is to prevent precisely what we have here, which is where you have a low-level clerk with no knowledge of the circumstances, you know, inadvertently accepting an accord in satisfaction. C1 is intended to prevent that from happening. And there is no compliance. But from the get-go, I think clearly my strongest argument is there is no bona fide dispute about this judgment. And if the prospect of future 60-D relief could make a bona fide dispute, then no judgment is safe. The interest in finality has to trump any interest in changing the law. If the court has no further questions, I will be happy to sit down. Otherwise, I'll be happy to answer the questions. No further questions, Mr. Arnold. Thank you. Mr. Shortland has three-and-a-half minutes rebuttal. Thank you, Judge Lurie. Thank you, Your Honors. I think it's important to point out that our argument here is twofold. First of all, there was a separate agreement reached between Monsanto and Lauren David for the accord in satisfaction that occurred here. Monsanto agreed separately from the check itself to settle this matter for the $35,000, as evidenced in the letter from Lauren David to Monsanto, which Monsanto submitted as part of its proposal here. And the evidence that shows that there was agreement, the evidence in the letter, is the statement. What is the statement? According to your instructions? The figures given to me. Based on instructions? Right. His letter says specifically, according to the figures given to me and accepted, please accept this check as full payment or return promptly. And thank you. It closes it out. Thank you, and God bless Lauren David. And then there's a copy shown to somebody whose name we haven't been able to figure out. That's not exactly an agreement. Well, the evidence is the agreement from Lauren David's standpoint. And that was accepted by Monsanto. The fallback argument, of course, that this is an agreement also pursuant to 3-311, which doesn't require an express agreement between the parties. It simply acts by operation of law and by accepting this check, which is clearly marked, satisfaction of judgment in full. And by not returning it to my client as required under 3-311C within 90 days, that that constitutes a also constitutes a satisfaction. Here they hung on to it for seven months and then brought this motion to the court. I think it's important to go over this letter that Monsanto says was the direction to David to put all communications to Glennon Fogarty. He says, I'm in receipt of a recent correspondence requesting to contact Mr. Riata directly. To date, the parties have utilized a single point of contact to conduct settlement discussions. I believe this approach is the most efficient and appropriate. Please be advised that I will provide any settlement proposal you forward to Monsanto for consideration. That is much more of a suggestion than a direction. 3-311 on this point states, the claimant, if an organization, proves that within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted, that communications concerning disputed debts, including an instrument tendered as a full satisfaction of a debt, are to be sent to a designated person, office, or place. That's important language, right? Yeah, absolutely. Designated person. Yeah, absolutely. And so is the matter concerning a conspicuous statement that this should be sent there. And so that, I don't believe that letter complies with the requirements under 3-311. And for those reasons, and because this was a disputed debt, because of all the matters that were stated before the court, we believe that this matter should be remanded back to the district court for reconsideration. Thank you, Mr. Sortland. We'll take the case under advisement.